UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERTC EXPRESS LLC,

Plaintiff,

– *against* –

REGULUS GROUP LLC *and* XBP GLOBAL HOLDINGS, INC.,

Defendants.

**OPINION & ORDER**

25-cv-08490 (ER)

RAMOS, D.J.:

ERTC Express LLC ("ERTC") claims that Regulus Group LLC ("Regulus") and XBP Global Holdings, Inc. ("XBP Global") (collectively "the Defendants") withheld federal tax refund checks that the Defendants were contractually obligated to forward to ERTC's clients and used the checks to extort ERTC. Doc. 12. In the instant motion, the Defendants move to dismiss XBP Global from all causes of action for lack of personal jurisdiction pursuant to Fed. R. Civ. Proc. 12(b)(2), to dismiss XBP Global for failure to state a claim pursuant to Fed. R. Civ. Proc. 12(b)(6), and to dismiss tort and equity claims against both defendants pursuant to Fed. R. Civ. Proc. 12(b)(6). For the reasons set forth below, the Defendants' motion is GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND[1]

ERTC is a Wyoming company registered as a foreign entity to do business in New York that helps clients obtain tax refunds from the federal government. Doc. 12 ¶¶ 10. ERTC contracted with Regulus, a lockbox payment provider, to receive refund checks

[1] The following factual background is based on: ERTC's verified complaint, Doc. 12; the Defendants' memo in support of motion to dismiss, Doc. 64; Lakshmi Narayanan's declaration in support of motion to dismiss, Doc. 65; ERTC's attorney's declaration in opposition to the motion to dismiss, Doc. 68; ERTC's memo in opposition of motion to dismiss, Doc. 67. For purposes of the motion to dismiss pursuant to Rule 12(b)(6), the Court may only rely on the facts asserted in the complaint and its attached documents. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). However, for purposes of determining personal jurisdiction under Rule 12(b)(2), the Court may rely on materials outside of the pleading. *See Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 349 (S.D.N.Y. 2019).

from the U.S. Treasury Department ("Treasury"), deposit them into segregated accounts for the benefit of ERTC's clients, and process the payments to ensure that the clients and any third parties receive their share of the refund check. *Id.* ¶¶ 17, 21.

Regulus is a Delaware company with its principal place of business in Texas. *Id.* ¶ 11. XBP Global is also a Delaware company with its principal place of business in Texas. *Id.* ¶ 12. Both Regulus and XBP Global are located at 2701 East Grauwyler Rd., Irving, Texas 75061. *Id.* ¶¶ 11–12. ERTC alleges that Regulus' parent company, Exela Technologies Company ("Exela"), was rebranded and reorganized to become XBP Global. *Id.* at 1. However, the Defendants contend that XBP Global acquired Exela on July 29, 2025, at which point Exela became XBP Americas, LLC ("XBP Americas"). Doc. 68-1 at 14. Throughout the complaint, ERTC refers to Regulus and XBP Global collectively as Exela. Doc. 12 at 1.

ERTC entered into a master services agreement (MSA) on March 23, 2022. Doc. 12-2 at 10. ERTC alleges that Exela—referring to both Regulus and XBP Global—was a party to the MSA. Doc. 12 ¶ 21. Meanwhile, the Defendants claim that the MSA was only between ERTC and Regulus and that XBP Global was not a party to the agreement. Doc. 64 at 15. The MSA is signed by John Souza—as the chief executive officer of ERTC—and Srini Marah—as the president of Regulus. Doc. 12-2 at 10. The MSA explicitly states that it is an agreement between ERTC and Regulus and does not mention XBP Global.[2] *See Id.* at 2. The MSA includes a forum selection clause, which states in relevant part:

> This agreement and any claim, whether in contract, tort, or otherwise arising from this Agreement, shall be governed by and interpreted in accordance with the laws of the State of New York. Except as otherwise set forth herein, the Parties: (i) agree that any legal action or proceeding arising under this Agreement shall be brought in the State of New York, (ii) irrevocably submit to the jurisdiction of such

---

[2] XBP Global had not yet acquired Exela Technologies when the MSA was executed. *See* Doc. 68-1 at 14 (stating that XBP Global finalized its acquisition on July 29, 2025).

> courts; (iii) agree not to assert any claim or defense that they are not subject to the jurisdiction of such courts . . .

*Id*. at 8.

The parties subsequently executed a statement of work (SOW 1) on August 18, 2022, to define the specific services to be performed. Doc. 12-3 at 3. The SOW 1 states that it "is made by and between" ERTC and Regulus and does not mention XBP Global.[3] *Id*. at 2. The SOW 1 was signed by Souza and Lakshmi Narayanan, who is listed as the president of billing and payments for Regulus. *Id*. at 3. However, ERTC alleges in its opposition brief that Narayanan is instead the president of bills and payments for XBP Global, and he never worked for Regulus. Doc. 67 at 14, 28. Narayanan's own declaration states that at all relevant times, he was the president of bills and payments for XBP Americas, and his duties in this position included overseeing Regulus accounts. Doc. 65 ¶ 1.

ERTC alleges that the MSA and SOW 1 together required the Defendants to act as a fiduciary on behalf of ERTC and ERTC clients by: (a) receiving refund checks on behalf of ERTC clients from the Treasury; (b) depositing the checks into sub-accounts designated for ERTC clients; and (c) disbursing the funds according to ERTC's instructions. Doc. 12 ¶ 22.

ERTC asserts that by September 2023, the Defendants were having difficulties depositing the tax refund checks at their bank, Bank of Texas, and that by January 2024, the Defendants could not deposit the checks into their bank at all. *Id*. ¶¶ 26–28. The Defendants allegedly never established a relationship with a new bank to process the refund checks. *Id*. ¶ 30. ERTC alleges that during this period, the Defendants continued to receive and withhold the checks they received from the Treasury even though they were unable to deposit or process the checks pursuant to their obligations in the MSA and

[3] XBP Global had not yet acquired Exela Technologies when the SOW 1 was executed. *See* Doc. 68-1 at 14 (stating that XBP Global finalized its acquisition on July 29, 2025).

SOW 1. *Id.* ¶ 31. ERTC alleges that they repeatedly asked the Defendants to provide inventory logs and to forward them the checks so they could arrange to have another lockbox provider process them. *Id.* ¶¶ 32–33. In response, ERTC alleges that the Defendants refused to cooperate or forward the checks until ERTC agreed to sign a new statement of work and pay for check-forwarding services. *Id.* ¶¶ 34–35.

Souza emailed Exela employee Amrish Kaushik[4] on September 24, 2024, stating that failure to process the checks constituted a material breach of the parties' agreement. Doc. 12-5. ERTC alleges that the Defendants responded by demanding that ERTC accept new contractual terms, sending invoices for periods during which the Defendants had not performed, suspending ERTC's account for nonpayment, refusing to renew its contract with ERTC, and threatening to return the checks to the Treasury. Doc. 12 ¶¶ 36–38, 47–48.

ERTC agreed to an amended statement of work (SOW 2) on November 1, 2024. Doc. 23-5. As with the SOW 1, SOW 2 was signed by Souza and Narayanan. *Id.* at 3. The SOW 2 states that it is made "by and between" ERTC and Regulus and states that ERTC "is currently past due on their account," with an unpaid balance of $641,121.15 as of October 28, 2024. *Id.* at 7.

The complaint alleges that thousands of ERTC's clients have been awaiting payments for refunds authorized under the Coronavirus Act, Relief, and Economic Security (CARES) Act and the American Rescue Plan Act. Doc. 12 ¶¶ 15–16. It states that by January 2025, the Defendants were holding checks for at least forty-three of ERTC's clients, and the Defendants refused to close nearly 1,000 accounts that were no longer necessary. *Id.* ¶¶ 45, 55. ERTC alleges that they began to receive litigation demands from their clients in February 2025 arising out of the Defendants' failure to perform. *Id.* ¶ 46.

---

[4] In their opposition brief, ERTC asserts that Kaushik is a vice president at XBP Global. Doc. 67 at 28.

ERTC further alleges that the Defendants used the leverage from withholding the checks to pressure them into paying through April 2025, executing an agreement to hold the Defendants harmless, and entering into negotiations over a new agreement that would include a "mail-forwarding" term that ERTC did not want. *Id.* ¶¶ 49, 51, 54, 60. General counsel for Exela, Taylor Pensoneau,[5] emailed ERTC on October 7, 2025, notifying it that Regulus would be suspending service and returning the checks to the Treasury because ERTC had failed to pay. Doc. 12-6. Souza responded the same day, urging the Defendants to stop threatening ERTC and asking: "[w]hy are you attempting to harm our company? The deliberate damage you are causing will be irreversible." Doc. 12-7 at 2. Pensoneau also denied ERTC's request to provide an itemized breakdown of the checks being withheld. Doc. 12-8.

## II. PROCEDURAL HISTORY

ERTC filed the complaint on October 15, 2025, asserting seven causes of action: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) unjust enrichment; (4) breach of fiduciary duties of loyalty, good faith, care, prudence, disclosure, and obedience; (5) conversion; (6) tortious interference with prospective business advantage; and (7) declaratory judgment that: (a) the amendments made under economic duress are void and unenforceable; (b) any limitation of liability cap is unenforceable due to willful misconduct; (c) ERTC's payment pauses were excused because of the Defendants' non-performance; and (d) ERTC owes no further sums. Doc. 12 ¶¶ 69–105.

The Defendants filed the instant motion to dismiss ERTC's complaint on December 12, 2025, asking the Court to dismiss all claims against XBP Global pursuant to Rules 12(b)(2) and 12(b)(6) and to dismiss the tort and equity claims against both defendants pursuant to Rule 12(b)(6). Doc. 63. The Defendants are not moving to

---

[5] In their opposition brief, ERTC asserts that Pensoneau is XBP Global's deputy general counsel. Doc. 67 at 29.

dismiss the breach of contract, breach of covenant of good faith and fair dealing, or declaratory judgment claims against Regulus.

## III. LEGAL STANDARD

### A. Dismissal Under Rule 12(b)(2)

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 322–323 (S.D.N.Y. 2017) (quoting *BHC Interim Funding, LP v. Bracewell & Patterson, LLP,* No. 2 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003)). "To meet this burden, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction." *Id*. at 323. Because 12(b)(2) motions are inherently matters requiring the resolution of factual issues outside of the pleadings, courts may rely on additional materials when ruling on such motions. *Holmes v. Apple Inc.*, No. 17 Civ. 4557 (ER), 2018 WL 3542856, at *3 (S.D.N.Y. July 23, 2018), *aff'd,* 797 F. App'x. 557 (2d Cir. 2019) (citations omitted). "In ruling on the theory of jurisdictional allegations, the court may provisionally accept disputed factual allegations as true. In making such a ruling, the court need only determine whether the facts alleged by the plaintiff, if true, are sufficient to establish jurisdiction; no evidentiary hearing or factual determination is necessary for that purpose." *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 153 (2d Cir. 1999).

### B. Dismissal Under Rule 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In

considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "When ruling on a Rule 12(b)(6) motion, the Court must accept all factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Local 171 Pension Fund v. Stone*, No. 24 Civ. 01769 (MMG), 2025 WL 936538, at *1 (S.D.N.Y. Mar. 27, 2025) (citing *Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

## IV. MOTION TO DISMISS XBP GLOBAL FOR LACK OF PERSONAL JURISDICTION

In assessing whether personal jurisdiction is authorized, the court must first look to the long-arm statute of the forum state. *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). In New York, courts look to the state's general jurisdiction statute, C.P.L.R. § 301, or its long arm statute, C.P.L.R. § 302. *Sanchez v. NutCo, Inc.*, No. 20 Civ. 10107 (JPO), 2022 WL 846896, at *4 (S.D.N.Y. Mar. 22, 2022). If the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the court's exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

### A. Group Pleading

The Defendants argue that ERTC failed to establish personal jurisdiction over XBP Global because it used group pleading to refer to both defendants collectively under the name Exela without distinguishing between XBP Global's alleged conduct and Regulus' alleged conduct. Doc. 64 at 11–12. ERTC makes no argument about group

pleadings. The Defendants argue that ERTC's failure to address this argument is a concession that the argument is true, and the Court should dismiss XBP Global on this basis alone. Doc. 69 at 6.

Group pleading is a pleading that involves multiple defendants, where the plaintiff fails to clearly differentiate between them in their complaint. *See Haynes v. City of New York*, No. 19 Civ. 1925 (NRB), 2020 WL 4926178, at *5–6 (S.D.N.Y. Aug. 20, 2020). Because group pleadings conflate the conduct of different defendants, they do not satisfy a plaintiff's burden to establish a *prima facie* case of personal jurisdiction separately over each defendant as to each claim asserted. *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 396–397 (S.D.N.Y. 2021); *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20 Civ. 967, 2021 WL 918556, at *15 (S.D.N.Y. Mar. 10, 2021).

The complaint expressly refers to XBP Global and Regulus collectively as Exela. Doc. 12 at 1. This makes it difficult to determine which contacts ERTC alleges that XBP Global—as opposed to Regulus—had in New York. However, the Court may rely on additional materials for purposes of a Rule 12(b)(2) motion to dismiss. *See Holmes v. Apple Inc.*, 2018 WL 3542856, at *3. ERTC's opposition brief addresses the Defendants' other jurisdictional arguments and provides a sufficient basis for the Court to distinguish between the conduct alleged against Regulus and the conduct alleged against XBP Global. Therefore, the Court declines to dismiss XBP Global on the basis of impermissible group pleading alone.[6]

### B. General Jurisdiction

The Defendants argue that this Court lacks general jurisdiction over XBP Global. Doc. 64 at 12. ERTC makes no argument in response.

[6] The Defendants cite *Flanagan v. Girl Scouts of Suffolk County, Inc.*, No. 21 Civ. 7153 (KAM) (ARL), 2023 WL 6594885, at *8 (E.D.N.Y. Aug. 25, 2023) for the proposition that a plaintiff's failure to address an argument in opposition to a Rule 12(b)(6) motion to dismiss amounts to an abandonment of that argument. Doc. 69 at 6. However, the Defendants do not identify any cases in which a court in this Circuit has dismissed a party for lack of personal jurisdiction on the basis that the plaintiff failed to respond to one of the defendants' jurisdictional arguments.

C.P.L.R. § 301 confers general jurisdiction where a company "has engaged in such a continuous and systematic course of doing business [in New York] that a finding of its presence [in New York] is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal quotations and citation omitted). However, a court's exercise of general jurisdiction only comports with the due process requirements of the Fourteenth Amendment if the corporation's "affiliations with the State . . . render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is "essentially at home" in the state of its incorporation and the state of its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).

XBP Global is incorporated in Delaware, and its principal place of business is Texas. Doc. 12 ¶ 12. Therefore, XBP is not subject to general jurisdiction in New York.

**C. Specific Jurisdiction**

ERTC argues that the Court has specific jurisdiction over XBP Global because Regulus, as an alter ego of XBP Global, consented to New York jurisdiction through the forum selection clause in the MSA. Doc. 67 at 12.[7] The Defendants argue that the forum selection clause only binds Regulus because XBP Global is not a signatory, and ERTC failed to plausibly allege that Regulus is an alter ego of XBP Global. Doc. 69 at 7–8.

Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). When an agreement contains a valid and enforceable forum-selection clause, it is not necessary to inquire whether a party has satisfied New York's long-arm statute or

[7] The Defendants cite *Sound Around Inc. v. Shenzhen Keenray Innovations Ltd.*, No. 22 Civ. 06943 (HG), 2023 WL 4163115, at *3 (E.D.N.Y. June 23, 2023) to argue that the Court should not address this theory at all because it was raised for the first time in ERTC's opposition brief. Doc. 69 at 7. However, *Sound Around*'s support for this proposition is *Kiryas Joel Alliance v. Village of Kiryas Joel*, No. 11 Civ. 3982 (JSR), 2011 WL 5995075, at *10 n.9 (S.D.N.Y. Nov. 29, 2011), which was decided in the context of a motion to dismiss under Rule 12(b)(6). Because the instant analysis concerns Rule 12(b)(2), the Court will proceed instead under the authority of *Balestra*, 380 F. Supp. 3d at 349, which states that courts can look outside the pleadings for Rule 12(b)(2) motions.

federal due process requirements. *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20 Civ. 967 (LJL), 2021 WL 918556, at *6 (S.D.N.Y. Mar. 10, 2021). "[A] forum selection clause may be enforced against a company's alter ego." *Platina Bulk Carriers Pte Ltd. v. Praxis Energy Agents DMCC*, No. 20 Civ. 4892 (NRB), 2021 WL 4137528, at *4 (S.D.N.Y. Sept. 10, 2021).

In determining whether an entity is properly understood as an alter ego for jurisdictional purposes, courts consider a variety of factors, including: (1) whether there was a failure to observe corporate formalities; (2) evidence of undercapitalization; (3) intermingling of personal and corporate funds; (4) shared office space and phone numbers; (5) any overlap in ownership and directors; and (6) whether the corporation was used to perpetrate a wrongful act against the plaintiffs. *Caplan v. Dollinger*, 803 F. Supp. 3d 219, 232 (S.D.N.Y. 2025) (citation omitted). No single factor is dispositive because the key inquiry is "whether the corporation is being used by the alleged dominating entity to advance its own personal interests." *Caplan*, 803 F. Supp. 3d at 232 (citation omitted). "In making an alter ego determination, a court is concerned with reality and not form, and with how the corporation operated." *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 282 (S.D.N.Y. 2006) (citation omitted). Mere conclusory allegations without factual support are not sufficient to establish any factor for the alter ego theory. *HSM Holdings*, 2021 WL 918556, at *10.

ERTC states that Regulus and XBP Global share the same business address of 2701 East Grauwyler Rd., Irving Texas 75061. Doc. 12 ¶¶ 11–12. ERTC also alleges that XBP Global "exercises a high degree of control over the operations of Regulus." Doc. 67 at 12–14. In support, they assert that XBP Global is the rebranded and controlling parent of Regulus, and XBP Global participated directly in the conduct at issue through its executives and general counsel. *Id*. Whether Narayan and/or Pensoneau were employees of XBP Global, XBP Americas, or Regulus remains a question of fact not yet established. However, the Court must construe plaintiff's jurisdictional

allegations as true for purposes of this motion. *In re EHang Holdings Ltd. Securities Litigation*, 646 F. Supp. 3d 443, 455 (S.D.N.Y. 2022). Taking as true ERTC's allegations that XBP Global president Narayanan signed the SOW 1 and XBP Global general counsel Pensoneau provided ERTC notice of intent to suspend service, *see* Doc. 67 at 14, ERTC has shown that XBP Global directly participated in Regulus' business relationship with ERTC. This plausibly alleges failure to observe corporate formalities because XBP Global signed agreements on behalf of Regulus and that the corporation was being used to perpetrate wrongful acts because XBP Global used its general counsel to extort ERTC.

To be sure, this is a close case. ERTC has not pleaded all the factors relevant to considering an alter ego theory, including whether Regulus is undercapitalized, whether there is an intermingling of personal or corporate funds, or whether there is an overlap in ownership and directors. *See Caplan*, 803 F. Supp. 3d at 232. However, no factor is dispositive, and ERTC's allegations that the companies share the same office and XBP Global exercises control over Regulus' operations are sufficient to establish a *prima facie* case that Regulus is an alter ego for XBP Global. *See e.g., Platina*, 2021 WL 4137528, at *5 (holding that plaintiff established a *prima facie* case of alter ego jurisdiction because they plausibly alleged overlapping personnel, a common web address, and that the companies use each other to shelter assets); *Vinci Brands LLC v. Coach Services, Inc.*, No. 23 Civ. 5138 (LGS), 2025 WL 1663780, at *3 (S.D.N.Y. June 11, 2025) (holding that plaintiff established a *prima facie* case of alter ego jurisdiction because they plausibly alleged overlapping personnel, overlapping ownership, and intermingling of funds, even though they did not plausibly allege undercapitalization).

Construed in the light most favorable to ERTC, it has made a *prima facie* case that XBP Global consented to personal jurisdiction in New York pursuant to the alter ego theory. *See Vinci*, 2025 WL 1663780, at *4 (noting that the court must resolve all doubts

in the plaintiff's favor). Accordingly, XBP Global's motion to dismiss for lack of personal jurisdiction is denied.[8]

## V. MOTION TO DISMISS XBP GLOBAL FOR FAILURE TO STATE A CLAIM

Defendants argue that XBP Global must be dismissed because ERTC did not assert a claim against XBP Global individually. Docs. 64 at 22, 69 at 9–10. ERTC argues that XBP Global employees Narayanan, Kaushik, and Pensoneau had direct dealings with ERTC. Doc. 67 at 29–30.[9]

To survive a 12(b)(6) motion to dismiss, "[p]laintiffs must be able to separately state a claim against each and every defendant," *In re Zinc Antitrust Litigation*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016), and give them "fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007). For purposes of a 12(b)(6) motion, the Court may only consider factual allegations in the complaint, as well as documents attached to the complaint. *DiFolco*, 622 F.3d at 111. Courts in this Circuit routinely hold that group pleadings are insufficient to state a claim as to any particular defendant. *See Abadi v. NYU Langone Health Systems*, 714 F. Supp. 3d 387, 392 (S.D.N.Y. 2024).

While the Court was able to consider allegations in ERTC's opposition brief for purposes of establishing personal jurisdiction, the Court cannot consider them for purposes of the instant 12(b)(6) motion. *See Budhani v. Monster Energy Co.*, No. 20 Civ. 1409 (LJL), 2021 WL 5761902, at *3 (S.D.N.Y. Dec. 3, 2021) ("[I]t is axiomatic that the

---

[8] ERTC argues that if the Court is unable to determine whether it has personal jurisdiction over XBP Global, then jurisdictional discovery should be permitted to discover the precise nature of the relationship between XBP Global and Regulus. Doc. 67 at 15 n.2. Jurisdictional discovery is appropriate where the plaintiff has identified a genuine issue of jurisdictional fact. *Doe 1 v. Government of United States Virgin Islands*, 771 F. Supp. 3d 379, 397 (S.D.N.Y. 2025). However, the Court will not order jurisdictional discovery because, for the reasons set forth below, XBP Global is dismissed pursuant to Rule 12(b)(6).

[9] ERTC also argues that the Court should pierce the corporate veil because it plausibly alleged that Regulus was a mere instrumentality of XBP Global. Doc. 67 at 29–30. However, the case ERTC cites in support of this proposition is inapposite because it deals with veil-piercing for purposes of liability, not for purposes of determining whether the plaintiff failed to state a claim. *See Next Millenium Realty, LLC v. Adchem Corp.*, 690 F. App'x 710, 715 (2d Cir. 2017).

[c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss.") (citation omitted). Looking only to the complaint and its attached documents, ERTC alleges that Kaushik and Pensoneau communicated with ERTC regarding the checks, *see* Doc. 12 ¶ 35 (alleging that Kaushik refused to forward the checks until ERTC agreed to pay for check-forwarding services in August 2024), ¶ 61 (alleging that Pensoneau threatened to redirect checks to the Treasury in October 2025), and describes them both as employees of Exela. *See* Doc. 12 ¶¶ 29, 61. The complaint does not include direct reference to Narayanan, but his name appears as a signatory on the SOW 1, which is attached to the complaint. *See* Doc. 12-3 at 3 (identifying Narayanan as the president of Regulus).

Accepting all factual allegations in the complaint as true, Exela employees Kaushik and Pensoneau directly participated in the conduct at issue and Narayanan signed the SOW 1 on behalf of Regulus. On these facts, the Court cannot reasonably draw the inference that Kaushik, Pensoneau, or Narayanan were employees of XBP Global. With respect to Narayanan, nothing in the complaint asserts that he was an XBP Global employee. With respect to Kaushik and Pensoneau, referring to them as Exela employees—without expressly stating which of the defendants they are alleged to work for—amounts to group pleading. This is insufficient to state a claim against XBP Global or provide XBP Global fair notice of the claims against them. *See Abadi*, 714 F. Supp. 3d at 392 (noting that group pleading is insufficient to state a claim against individual defendants); *Appalachian Enterprises, Inc. v. ePayment Solutions, Ltd.*, No. 1 Civ. 11502 (GBD), 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) (noting that group pleading fails to give defendants adequate notice as to what they allegedly did wrong).

Accordingly, XBP Global's motion to dismiss claims for failure to state a claim pursuant to 12(b)(6) is granted.

## VI. MOTION TO DISMISS ERTC'S TORT AND EQUITY CLAIMS[10]

The Defendants moved to dismiss the following claims: (1) unjust enrichment; (2) breach of fiduciary duty; (3) conversion; and (4) tortious interference with prospective business advantage. Doc. 63. They do not seek dismissal of ERTC's breach of contract, breach of covenant of good faith and fair dealing, or declaratory judgment claims.

### A. Unjust Enrichment

The Defendants argue that ERTC failed to state a claim of unjust enrichment pursuant to Rule 12(b)(6) because the complaint does not allege how the Defendants were enriched by merely retaining the checks. Doc. 64 at 15. ERTC argues that the Defendants were enriched by using the checks as leverage to economically extort ERTC into paying Defendants. Doc. 67 at 16.

An unjust enrichment claim in New York requires proof that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what the plaintiff is seeking to recover. *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021). Unjust enrichment "is available if one man has obtained money from another, through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass." *Bernstein v. Citibank, N.A.*, No. 6 Civ. 15203 (DAB), 2008 WL 11516014, at *5 (S.D.N.Y. Dec. 1, 2008) (citations omitted).

ERTC's unjust enrichment claim states that (1) to the extent that the MSA is deemed unenforceable, the Defendants wrongfully received benefits by retaining checks during periods in which they did not perform, (2) at ERTC's expense, (3) and it would be against equity and good conscience to permit the Defendants to retain the checks. Doc. 12 ¶¶ 82–84. While this cause of action is not specific as to how the Defendants were enriched by merely retaining the checks without more, the full complaint alleges that the

[10] Because the Court has dismissed XBP Global for failure to state a claim, the following claims are analyzed with respect to Regulus only.

Defendants used these checks to extort favorable terms and payments from ERTC. *Id.* ¶¶ 47, 49, 66. Alleging that the Defendants extorted ERTC to obtain payment they would not otherwise have received is a valid basis on which to assert that they were enriched. *See Bernstein*, 2008 WL 11516014, at *5. Therefore, ERTC has sufficiently alleged unjust enrichment.

1. Duplicative Claim

The Defendants further argue that ERTC's unjust enrichment claim is duplicative of the breach of contract claim because both are premised on the same factual allegation that the Defendants wrongfully withheld the checks. Doc. 64 at 15. ERTC counters that the claim was properly pleaded in the alternative because the Defendants created a dispute about the validity of the contract by arguing that XBP Global was not a party to the contract. Doc. 67 at 15–16. The Defendants counter that a pleading in the alternative is improper because ERTC has not pleaded sufficient facts to show that the contract could be deemed invalid. Doc. 69 at 13–14.

In this Circuit, an unjust enrichment claim is duplicative of a breach of contract claim when they arise from the same facts and do not allege distinct damages. *Cooper*, 553 F. Supp. 3d at 115 (internal quotations and citations omitted). Moreover, unjust enrichment is a narrow claim only available "in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Aviles v. Wells Fargo Bank, N.A.*, No. 25 Civ. 312, 2026 WL 1256083, at *4 (2d Cir. May 7, 2026) (quoting *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012)). Courts in this Circuit allow plaintiffs to maintain unjust enrichment claims as pleadings in the alternative where the validity and scope of the contract is difficult to determine. *Keybanc Capital Markets, Inc. v. Extreme Steel, Inc.*, 710 F. Supp. 3d 239, 247 (S.D.N.Y. 2024). By contrast, "where there is no allegation that the contract at issue is invalid and the subject matter of the dispute is covered by the contract," courts have consistently

dismissed unjust enrichment claims. *Associated Mortgage Bankers, Inc. v. Calcon Mutual Mortgage LLC*, 159 F. Supp. 3d 324, 337 (E.D.N.Y. 2016).

First, the unjust enrichment claim is based on the same conduct as the breach of contract claim. *Compare* Doc. 12 ¶¶ 72–74 (predicating the breach of contract claim on the Defendants withholding the checks in violation of the contract's performance obligations), *with* ¶¶ 83–84 (predicating the unjust enrichment claim on the Defendants wrongfully retaining checks during periods of non-performance). Both claims also seek the same damages. *Compare Id.* ¶ 75 (seeking damages for breach of contract in excess of $2 million), *with* ¶ 85 (seeking damages for unjust enrichment in excess of $2 million).

Second, the complaint states that the unjust enrichment cause of action applies "[t]o the extent the Agreement is deemed unenforceable or rescinded," indicating that it is pleaded in the alternative. *Id.* ¶ 83. Though the Defendants argue that XBP Global is not a party to any agreement with ERTC, neither party disputes the existence of an agreement between ERTC and Regulus. *See* Doc. 64 at 7 (where the Defendants state that ERTC and Regulus entered into agreements with each other); Doc. 67 at 8 (where ERTC states that it entered into the MSA with Regulus).

Because there is no dispute as to whether a valid contract exists between ERTC and Regulus, and because the Court has dismissed XBP Global, the unjust enrichment claim against Regulus must be dismissed as duplicative. *See Ball v. Cook*, No. 11 Civ. 5926 (RJS), 2012 WL 4841735, at *10–11 (S.D.N.Y. Oct. 9, 2012) (dismissing an unjust enrichment claim as duplicative where there is no dispute about the validity of a contract between the parties).

**B. Breach of Fiduciary Duty**

1. Duplicative Claim

ERTC argues that the Defendants had an escrow relationship with ERTC, which gives rise to fiduciary duties not set forth in the contract.[11] Doc. 67 at 17. The Defendants do not deny that an escrow relationship between the parties existed, but they argue that the breach of fiduciary duty claim is duplicative because it is based on the same facts, seeks the same damages, and involves the same duties as the breach of contract claim. Docs. 64 at 17, 69 at 10.

A breach of fiduciary duty and breach of contract claim may both be premised on the same underlying conduct as long as there is a breach of duty independent of the contract. *Ambac Assurance Corp. v. U.S. Bank National Ass'n*, 328 F. Supp. 3d 141, 156 (S.D.N.Y. 2018). By contrast, when the parties owe each other no duty independent of the contract, "[a] breach of fiduciary duty claim must be dismissed as duplicative." *Perkins v. American Transit Insurance Co.*, No. 10 Civ. 5655 (CM), 2013 WL 174426, at *10 (S.D.N.Y. Jan. 15, 2013). To establish that a fiduciary duty is separate from a contract, it must be independent of wrongdoing expressly raised in the breach of contract claim or "encompassed within the contractual relationship by the requirement implicit in all contracts of fair dealings and good faith." *Id.* (citation omitted). In New York, the "scope of an Escrow Agent's fiduciary duty is defined by the scope of its contractual duty under the Escrow Agreement," and an escrow agreement "cannot impose upon [the escrow agent] any obligations in addition to its limited duties under the express terms of its contract." *Mexico Infrastructure Finance, LLC v. Corp. of Hamilton*, No. 17 Civ. 6424 (VSB), 2020 WL 4572679, at *5 (S.D.N.Y. Aug. 7, 2020) (citations omitted).

[11] ERTC also alleges that the Defendants owed a fiduciary duty to ERTC as a bailee of its property (the checks). However, bailees are typically not fiduciaries and only owe "a duty of ordinary care in dealing with the property entrusted to it." *Zaretsky v. Gemological Institute of America Inc.*, No. 14 Civ. 1113 (SAS), 2014 WL 1678990, at *5 (S.D.N.Y. Apr. 28, 2014) (citations omitted).

ERTC expressly states that the Defendants' fiduciary duties at issue arose from the parties' contracts, which lends support to the Defendants' argument that the fiduciary duties are not independent of the contractual duties. *See* Doc. 12 ¶ 87 ("The agreements between [the Defendants] and ERTC imposed fiduciary obligations upon [the Defendants]."). Further, the Defendants' alleged fiduciary duties are encompassed in ERTC's breach of contract claim. *See Id.* ¶ 73 (alleging breach of contract for withholding checks and conditioning performance on coerced payments), ¶ 88 (alleging breach of loyalty and good faith for withholding refund checks and demanding unwarranted payments); *see also Id.* ¶ 72 (alleging breach of contract for failure to process checks), ¶ 89 (alleging breach of the fiduciary duties of care and prudence for withholding checks without the ability to deposit them); *see also Id.* ¶ 73 (alleging breach of contract for failure to deliver inventory logs), ¶ 90 (alleging breach of the fiduciary duty of disclosure for refusing to provide inventory logs); *see also Id.* ¶ 70 (alleging breach of the binding and enforceable Agreements), ¶ 91 (alleging breach of the fiduciary duty of obedience for failing to abide by the terms of the Agreements).

Moreover, ERTC's assertion that the Defendants owed them escrow duties does not plausibly alleged an independent duty because escrow duties are limited to the scope of contractual duties. *See Mexico Infrastructure*, 2020 WL 4572679, at *5; *see also Qube Films Ltd v. Padell*, No. 13 Civ. 8405 (AJN), 2016 WL 881128, at *4 (S.D.N.Y. Mar. 1, 2016) ("The scope of an Escrow Agent's fiduciary duty is defined by the scope of its contractual duty under the Escrow Agreement.") (citation omitted).

Because the Defendants' fiduciary duties are encompassed by the parties' contracts, the breach of fiduciary duty claim must be dismissed as duplicative.

**C. Conversion**

The Defendants argue that the conversion claim cannot be sustained because ERTC did not have ownership, possession, or control of the checks prior to the Defendants, and the complaint does not allege any such facts. Doc. 64 at 19. ERTC

counters that it had "an interest in the funds represented by the Treasury checks" sufficient to sustain a conversion claim. Doc. 67 at 20.

"Under New York law, to maintain a claim for conversion, a plaintiff must show: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Coral Capital Solutions LLC v. Disrupt Social, LLC*, No. 24 Civ. 3940 (AS), 2025 WL 1424441, at *7 (S.D.N.Y. May 16, 2025) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)) (internal quotations omitted).[12]

ERTC baldly asserts that the agreements gave it legal ownership and an immediate right of possession to the checks. *See* Doc. 12 ¶ 94. The complaint provides no factual support for this assertion, and ERTC does not identify any portion of the MSA, SOW 1, or SOW 2 that bestows legal ownership of the checks to it. ERTC also alleges that it had an interest in the funds because the Defendants owed ERTC a portion of the checks after disbursement. *See Id.* ¶ 23 (stating that ERTC and its clients are entitled to a portion of the proceeds from each refund check), ¶ 40 (stating that the Defendants owed ERTC and its clients an amount in check disbursements). However, this does not support ERTC's claim of legal ownership. *See Shetel Industries*, 493 F. Supp. 3d at 123 ("[A]n

---

[12] The Defendants also argue that ERTC failed to identify a specific identifiable thing because the complaint does not identify the quantity, amount, or any other identifier regarding the checks. Doc. 64 at 18 n.3. ERTC counters that the checks at issue are sufficiently specific because they "are Treasury instruments made payable to identifiable ERTC clients," and the specific quantity, amount, and other identifiers of the checks were deliberately withheld from ERTC. Doc. 67 at 7, 20. "Under the law of New York, a check is representative of money and can be the subject of an action in trover or conversion." *Matter of D. H. Overmyer Co., Inc. (Ohio)*, 19 B.R. 750, 754 n.9 (Bankr. S.D.N.Y. 1982) (internal quotations and citations omitted). "Where the property alleged to have been converted is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." *Shetel Industries LLC v. Adin Dental Implant Systems, Inc.*, 493 F. Supp. 3d 64, 121 (E.D.N.Y. 2020) (citations omitted). The Court finds that federal tax refund checks sent by the Treasury to the Defendants to forward to ERTC clients is sufficiently specific. *Cf. Fabry's S.R.L. v. IFT International, Inc.*, No. 2 Civ. 9855 (SAS), 2003 WL 21203405, at *4 (holding that payments for merchandise at plaintiff's store was sufficiently specific).

obligation to be paid does not equate to a plaintiff's ownership, possession or control of the money in question.") (citation omitted).

Because ERTC fails to plausibly allege that it owned, controlled, or possessed the checks prior to the Defendants obtaining them, ERTC has not pleaded the elements of conversion. Therefore, the conversion claim must be dismissed. *See Jaffe v. Capital One Bank*, No. 9 Civ. 4106 (PGG), 2010 WL 691639, at *7 (S.D.N.Y. Mar. 1, 2010) (dismissing a conversion claim where the plaintiff failed to plead the elements of the claim).[13]

**D. Tortious Interference with Prospective Business Advantage**

The Defendants argue that ERTC's allegation of damage to their business relationship is too vague and conclusory to maintain a tortious interference claim. Doc. 64 at 20–21. ERTC counters that the elements of tortious interference do not require a plaintiff to identify individual clients, but rather to plead interference with a specific and identifiable business relationship. Doc. 67 at 23–24.

In New York, a claim of tortious interference with prospective business advantage requires a showing that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *POSCO Energy Co. v. FuelCell Energy, Inc.*, 560 F. Supp. 3d 747, 759 (S.D.N.Y. 2021) (quoting *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015)). "Failure to identify a specific business relationship with a third party is fatal to a

[13] The Defendants also argue that ERTC's conversion claim should be dismissed as duplicative of its breach of contract claim. Doc. 64 at 19–20. Because the claims seek different damage amounts, they are not duplicative. *See* Doc. 12 ¶ 75 (seeking $2 million in damages for breach of contract), ¶ 96 (seeking $150 million in damages)*; see also FS Media Holding Co. (Jersey) v. Harrison*, No. 13 Civ. 3144 (SAS), 2013 WL 5780771, at *5 (S.D.N.Y. Oct. 25, 2013) ("Because damages beyond those available for the breach of contract claim are available, the conversion claim against [defendant] is not duplicative."); *Westcon Group, Inc. v. CCC Technologies, Inc.*, No. 19 Civ. 02303 (PMH), 2022 WL 4134578, at *5 (S.D.N.Y. Sept. 12, 2022) ("[I]f the plaintiff can recover punitive damages under a conversion claim and cannot recover punitive damages under a breach of contract claim, then the punitive damages constitute unique recovery under the conversion claim and the claim is not duplicative . . . .").

tortious interference claim." *POSCO Energy*, 560 F. Supp. 3d at 759 (internal quotations and citations omitted). A tortious interference with prospective economic advantage claim is plausibly alleged if the complaint alleges a plaintiff's existing business relationship and that the plaintiff had and continued to have reasonable expectation that these relationships would be ongoing. *SlackPass, Inc. v. Frosted, Inc.*, No. 23 Civ. 6393 (ER), 2025 WL 1004854, at *17 (S.D.N.Y. Mar. 31, 2025) (citing *Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*, 206 F. Supp. 3d 869, 912 (S.D.N.Y. 2016)).[14]

The complaint alleges that ERTC "had business relations with clients who used Exela's lockbox services," and "Exela interfered with those business relations when they withheld checks owed to ERTC clients." Doc. 12 ¶¶ 98–99. Further, it states that thousands of ERTC clients have been awaiting refunds authorized under the CARES Act and the American Rescue Plan Act, the Defendants were holding checks for at least forty-three of its clients in January 2025, and the Defendants refused to close nearly 1,000 accounts—ostensibly designated for ERTC clients—that were no longer necessary. *Id.* ¶¶ 15–16, 45, 55. This language is more specific than *POSCO Energy* and *Lesesne* because it states that the business relationship at issue is a subset of ERTC's clients—those who used the Defendants' lockbox services. *See POSCO Energy*, 560 F. Supp. 3d at 760 (holding that "third party purchasers in the trading market" was too vague and speculative); *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 227 (S.D.N.Y. 2013) (holding that "patients" and other "unspecified third parties" was not sufficiently specific). At this stage, ERTC has sufficiently alleged that they had an existing business relationship with this subset of existing clients with a reasonable expectation that they would have continued their relationship but for the Defendants' alleged conduct. *See SlackPass*, 2025 WL 1004854, at *17 (holding as sufficient plaintiff's allegation of a business relationship

[14] "Tortious interference with prospective business advantage is also referred to as 'tortious interference with business relations' or 'tortious interference with prospective economic advantage.'" *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 262 n.16 (S.D.N.Y. 2023) (citations omitted).

with over one hundred customers with whom they had long-term contractual relationships); *Gym Door Repairs*, 206 F. Supp. 3d at 912 (holding as sufficient plaintiff's allegation that they had a business relationship with 4,700 school districts in which their product has been installed). Therefore, ERTC has sufficiently alleged a business relationship.

1. Duplicative Claim

The Defendants argue that the tortious interference claim should be dismissed as duplicative because it arises from the same facts and seeks identical damages as the breach of contract claim. Doc. 64 at 21. ERTC argues that the tortious interference claim is not duplicative because the Defendants acted with willful intent to harm ERTC and its relationship with its clients, and the Defendants violated an independent fiduciary duty in tort. Doc. 67 at 24, 27.

A tortious interference claim cannot be maintained when it is duplicative of a breach of contract claim, meaning that it arises from the same facts and alleges the same damages. *POSCO Energy*, 560 F. Supp. 3d at 760. To maintain a tortious interference alongside a breach of contract claim, a plaintiff must show that the defendant breached a duty independent of its duties under the contract. *Apotex Corp. v. Hospira Healthcare India Private Ltd.*, No. 18 Civ. 4903 (JMF), 2019 WL 3066328, at *7 (S.D.N.Y. July 12, 2019).

With respect to ERTC's argument that the Defendants violated an independent fiduciary duty, the Court has already found that ERTC has not plausibly alleged an independent fiduciary duty because an escrow relationship does not give rise to fiduciary duties beyond its contractual obligations. *See Mexico Infrastructure*, 2020 WL 4572679, at *5.

ERTC also argues that the Defendants "acted with the sole purpose of harming ERTC." *See* Doc. 12 ¶ 100. As a preliminary matter, willful intent to harm alone—without an independent tort violation—is insufficient to maintain a tortious interference

claim alongside a breach of contract claim. *See Apotex*, 2019 WL 3066328, at *2 (stating that a defendant may breach both a contract and an independent duty in tort when their conduct "goes beyond a mere breach of the contract *and* acts in such a way that a trier of fact could infer that it willfully intended to harm the plaintiff") (emphasis added) (citations omitted). In any event, ERTC supports their allegation with conduct that falls within the scope of the contract. *See Id.* ¶ 5 (alleging the Defendants leveraged control over the refund checks even after ERTC agreed to their demands), ¶ 7 (alleging the Defendants refused to forward the checks so they could be processed by a different lockbox provider and threatened to return the checks to the Treasury), ¶ 31 (alleging the Defendants manipulated information about the inventory of checks to extract favorable contractual terms).

Because ERTC has failed to plausibly allege that the Defendants violated a tort independent of their contractual duties, the tortious interference with prospective business relations claim must be dismissed. *See Apotex*, 2019 WL 3066328, at *7 (dismissing a tortious interference with business relations claim as duplicative because plaintiff's allegations of wrongful conduct "all implicate matters covered by the Agreement"); *Logfret, Inc. v. Gerber Finance, Inc.*, 559 F. Supp. 3d 348, 365 (S.D.N.Y. 2021) ("Because these allegations mirror [Plaintiff's] breach of contract claim, the claim fails as duplicative.").

## VII. CONCLUSION

For the aforementioned reasons, the Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Defendants' motions to dismiss XBP Global for lack of personal jurisdiction is DENIED. The Defendants' motion to dismiss XBP Global for failure to state a claim against them is GRANTED. The Defendants' motion to dismiss ERTC's unjust enrichment, breach of fiduciary duty, conversion claims, and tortious interference is GRANTED. Regulus is directed to file an answer to the Complaint by

October 13, 2026. The Clerk of Court is respectfully directed to terminate the motions, Doc. 63, and to dismiss XBP Global from this case.

It is SO ORDERED.

Dated: September 22, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.